# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2026

Lyle W. Cayce
Clerk

————————

No. 26-30018

————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TERRANCE MORGAN,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CR-277-2

———————————————————————

Before STEWART, GRAVES, and WILSON, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:[*]

This appeal involves Terrance Morgan's challenge to the revocation of his supervised release. Morgan admitted to violations including two positive drug tests, failure to report to and communicate with probation, failure to provide proof of employment or an equivalent, and a state court conviction for battery of a domestic partner and simple battery. After his initial appearance, Morgan entered a thirty-day inpatient treatment program,

———————————————

[*] JUDGE GRAVES concurs in the judgment only.

No. 26-30018

followed by home detention with location monitoring. At his revocation hearing, the district court revoked Morgan's supervised release and imposed a term of imprisonment on the revocation. Morgan argues that the district court erred by not considering the treatment exception to mandatory revocation, relying on clearly erroneous facts, applying the wrong version of the U.S. Sentencing Guidelines (the "Guidelines"), and denying a continuance of the hearing. For the following reasons, we AFFIRM.

## I

On September 27, 2018, Morgan pleaded guilty to conspiracy to possess firearms in furtherance of a drug trafficking crime, being a felon in possession of a firearm, possession with intent to distribute U-47700,[1] and possession of firearms in furtherance of drug trafficking. The district court sentenced Morgan to eighty-two months of imprisonment and three years of supervised release. On December 2, 2022, Morgan completed his term of imprisonment and began serving his term of supervised release.

On June 30, 2023, the U.S. Probation Office ("Probation") petitioned for an arrest warrant, which was later amended to add additional violations. According to the dispositional report, Morgan violated the terms of his supervised release in the following ways: (1) On April 13, 2023, Morgan was referred to substance abuse counseling; he "had not attended treatment since May 30, 2023."[2] (2) On April 28, 2023, Morgan tested positive for

---

[1] U-47700 is a synthetic opioid and Schedule I controlled substance. Alexander Muacevic & John R. Adler, *U-47700: An Emerging Threat*, 9 CUREUS 1791 (2017), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC5741271.

[2] There is an inconsistency in the record regarding the dates of this particular violation. However, the dates herein are taken from the dispositional report and were also recited by the district court judge at the revocation hearing.

amphetamines and marijuana. (3) On May 15, 2023, Morgan tested positive for cocaine, amphetamines, and marijuana. (4) On June 22, 2023, Morgan did not report to Probation as instructed or respond to contacts from Probation. (5) On June 26, 2023, "Morgan had not provided proof of employment" or a specified alternative. (6) On September 12, 2024, Morgan was arrested and charged with domestic abuse/battery involving a pregnant victim and simple battery, which was later modified to battery upon a dating partner and simple battery. Morgan pleaded guilty and was sentenced to a suspended six-month sentence of incarceration, with two years of inactive probation. While on probation, he tested positive for amphetamines (June 11, 2025) and cannabis (July 24, 2025). (7) On November 18, 2025, Morgan tested positive for cannabis and admitted to use of marijuana "with last use on October 16, 2025."

Morgan was eventually arrested on October 17, 2025, and thereafter attended his detention hearing. At the hearing, the magistrate judge released Morgan on bond to a thirty-day inpatient treatment program, to be followed by home detention with location monitoring. Morgan reportedly completed the thirty-day program and continued on to home detention with location monitoring.

On December 11, 2025, the district court held Morgan's revocation hearing. Morgan admitted to the violations, but his counsel stated that there were "a lot of things" not included in the dispositional report of which the court should be aware. The district court voiced concern with Morgan's numerous violations, which indicated that Morgan's conduct was "just getting worse." "First marijuana, then eventually cocaine, and then physical violence. It's a downward slope . . . ." Morgan's counsel explained that after his detention hearing, Morgan successfully completed the thirty-day inpatient treatment program and had no violations since that time. Counsel

requested that the court "take th[e] admission and then set a hearing date for a few months in the future to see how he is doing on his supervision."

The district court declined to continue the hearing. It proceeded to revoke Morgan's supervised release and impose a sentence of eight months of imprisonment and twenty-four months of supervised release. Morgan objected and again requested that the hearing be reset. Morgan requested that, in the alternative, his turn-in date be moved to after the holidays. The district court agreed to move his turn-in date but declined to change its decision to revoke, explaining that it was "concerned" with the domestic violence charge and could not "take the chance of somebody getting hurt."

On December 22, 2025, Morgan filed a motion to reconsider the revocation. The Government opposed the motion. The district court scheduled oral argument but later cancelled the argument and issued an order stating that the motion was denied for the same reasons stated at the hearing. Morgan timely appealed.

## II

This court has jurisdiction over Morgan's appeal of his revocation and accompanying sentence as an appeal of a final decision of the district court. 28 U.S.C. § 1291; *see also* 18 U.S.C. § 3742.

Morgan essentially raises three challenges to the revocation decision. He argues that the district court erred by: (1) failing to recognize the treatment exception to mandatory revocation and/or relying on a clearly erroneous view of the facts in determining that the exception was inapplicable; (2) using an outdated version of the Guidelines; and (3) denying a continuance of his revocation hearing. We consider each in turn.

### III

We first consider whether the district court erred by failing to recognize the treatment exception, or in determining that it was inapplicable to Morgan.

### A

We review a preserved challenge to a district court's revocation decision for an abuse of discretion. *United States v. Brooker*, 858 F.3d 983, 985 (5th Cir. 2017). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Gentry*, 941 F.3d 767, 776 (5th Cir. 2019) (quoting *United States v. Teuschler*, 689 F.3d 397, 399 (5th Cir. 2012)). The "legal and constitutional bases of the challenges thereto are reviewed de novo." *United States v. Brigham*, 569 F.3d 220, 232 (5th Cir. 2009) (citation modified).

Revocation of supervised release is mandatory when the violation is possession of a controlled substance, possession of a firearm in violation of federal law, refusal to comply with a drug test condition imposed, or more than three positive drug tests in one year. 18 U.S.C. § 3583(g). However, "when considering any action against a defendant who fails a drug test," "[t]he court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception" to mandatory revocation. *Id.* § 3583(d).

At oral argument, counsel emphasized that Morgan's challenge was to the process the district court followed. In Morgan's view, the district court erred by not acknowledging his successful inpatient treatment, and in failing to apply the treatment exception. We find no error. At the revocation hearing, the district court correctly stated the law regarding the mandatory revocation and the exception. Specifically, it stated that Morgan's alleged

violations included positive drug tests, from which the court could determine Morgan possessed a controlled substance. It stated that if it made that finding, and "determine[d] that drug treatment was available to the defendant and his performance was unsatisfactory," his supervised release must be revoked.

As counsel acknowledged, the district court was made aware of Morgan's participation in the inpatient treatment program through his counsel's argument at the hearing. Although the district court did not repeat the facts of Morgan's inpatient treatment aloud, this court has made clear that "a district court is not required to engage in [a] 'checklist recitation' of sentencing factors at a revocation hearing"—"[i]mplicit consideration is all that is required." *Brooker*, 858 F.3d at 987 (quoting *United States v. Kippers*, 685 F.3d 491, 498 (5th Cir. 2012)).[3] When a defendant argues that treatment

---

[3] Unlike Morgan, the defendant in *Brooker* had not completed a drug treatment program at the time of his revocation hearing. *United States v. Brooker*, 858 F.3d 983, 985 (5th Cir. 2017). Instead, at the hearing, Brooker argued that the district court should send him to a drug treatment program in lieu of sentencing him to a term of imprisonment. *Id.* Here, at the time of his revocation hearing, Morgan had already completed a drug treatment program. At the hearing, Morgan argued that the drug treatment exception was applicable, and that the district court should allow him to continue on supervised release rather than sentence him to a term of imprisonment.

Despite this factual difference between *Brooker* and the instant case (Brooker requested to start treatment and Morgan requested no imprisonment because of his completed treatment), both defendants made the same underlying argument: The district court should hold that the treatment exception applied. *See id.* at 985. Thus, the panel's holding in *Brooker* that a court need not "engage in a 'checklist recitation,'" or say any "magic words" is still relevant to our analysis here. *See id.* at 987. Indeed, a district court need only implicitly consider whether the treatment exception applies; it does not need to repeat a defendant's unavailing arguments that it is applicable. *Id.* As explained above, in this case, the district court heard Morgan's argument that his treatment warranted an exception from mandatory revocation but ultimately revoked his supervised release. Thus, the record here does not indicate that the district court failed to consider the exception.

was sufficient to address the violation and a district court continues on to revoke supervised release, the district court is said to have "implicitly considered and rejected application of the drug treatment exception." *Id.* In this case, Morgan argued that treatment was sufficient to address his violations, but the district court ultimately disagreed.

In sum, the record reflects that the district court was aware of the applicable law (including the availability of the exception), and was aware of Morgan's successful completion of inpatient treatment. However, the district court ultimately decided that the exception did not apply. There was no error of law in that respect. *See Gentry*, 941 F.3d at 776.

**B**

Morgan also argues that the district court took a clearly erroneous view of the facts in determining that the treatment exception did not apply. But Morgan began his revocation hearing by admitting to an extensive list of violations including failure to attend treatment, failure to communicate with and report to Probation, failure to provide proof of employment or an acceptable equivalent, three positive drug tests (in addition to two positive drug tests while on probation for his state court charge), and perhaps most significantly, a guilty plea to battery upon a dating partner and simple battery.

Counsel urged at oral argument that the district court erred by viewing a "snapshot" of Morgan at the time he was arrested in October 2025, rather than at the time of his revocation hearing in December 2025. But the district court may have given more weight to Morgan's continuous violations of supervised release before the detention hearing, rather than the comparatively shorter period of time Morgan was in an inpatient treatment program and location-monitored. That the district court was not persuaded by his treatment does not constitute an abuse of discretion.

No. 26-30018

The hearing transcript indicates that the district court was primarily concerned with the guilty plea to battery on a dating partner and simple battery. At the conclusion of the hearing, when asked again by defense counsel to continue the hearing, the district court judge stated that he was "not going to change the ruling." He said that he was "concerned with domestic violence, this type [of] situation," and concerned that it appeared Morgan's behavior was escalating from drugs to violence. He could not "take the chance of somebody getting hurt."

Counsel seized on the fact that the district court made references to Morgan's friends, though there was no evidence that Morgan had continued to spend time with the same people who had led to his involvement in criminal activity. But the district court's comments appear to be warnings that Morgan's friends could negatively influence his behavior: It warned that friends are "like an elevator . . . they can bring you up but they can sure take you down." It urged that Morgan was a "young person" with his "whole life ahead of [him]." And even if the district court erroneously believed that Morgan was spending time with the same friends, those comments were made alongside others, recounting the seriousness of Morgan's admitted violations and his failure to appear for court.[4] Even taking Morgan's friendships out of the equation, we cannot say that the district court took an erroneous view of the evidence.

In sum, the record does not support Morgan's argument that the district court took a clearly erroneous view of the facts. *See Gentry*, 941 F.3d at 776.

---

[4] Morgan argues that the district court also made a factual error when it stated that he had failed to appear in court. His failure to appear, he argues, was in state court, not federal court. That argument is unpersuasive: A failure to appear is a failure to appear.

## IV

We next consider whether the district court reversibly erred by applying the wrong version of the Guidelines. It is true that "[a] sentencing court must apply the version of the [Guidelines] effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). However, in order for a court's error to be reversible, it cannot be harmless: Even if error is established, it must "be disregarded if it is harmless, i.e., if it does not affect substantial rights." *United States v. Randall*, 924 F.3d 790, 795 (5th Cir. 2019) (citing Fed. R. Crim. P. 52(a)).

The Government concedes that the district court cited to the 2024 Guidelines, rather than the 2025 Guidelines in effect at the time of Morgan's revocation hearing. However, the district court's mistaken use of the 2024 Guidelines is a harmless error. The 2025 Guidelines do not materially differ from the 2024 Guidelines in any way relevant to Morgan's case. Though the 2025 Guidelines do emphasize the importance of the rehabilitative purposes of supervised release—as opposed to the punitive purposes of probation— that distinction has always existed. And to the extent that the updated Guidelines require an individualized assessment of defendants, there has been no evidence offered that the district court failed to conduct an individualized assessment in this case. Further, as explained *supra*, if the district court found that Morgan's participation in treatment was unsatisfactory and the 18 U.S.C. § 3583(d) exception thus did not apply, revocation was mandatory under 18 U.S.C. § 3583(g). The district court's holding that revocation was mandatory and the exception did not apply is not affected by the amendments to the Sentencing Guidelines.

Therefore, although it does appear that the district court mistakenly used the 2024 Guidelines, that error did not affect Morgan's substantial rights and was thus harmless. *See Randall*, 924 F.3d at 795.

**V**

Finally, we consider whether the district court erred by denying Morgan a continuance. A district court's denial of a motion for a continuance is reviewed for abuse of discretion. *Barnett*, 197 F.3d at 144. Whether the denial was an abuse of discretion is a fact-specific inquiry based on "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *United States v. Sahley*, 526 F.2d 913, 918 (5th Cir. 1976) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "To prevail, the movant must show that the denial resulted in 'specific and compelling' or 'serious' prejudice." *Barnett*, 197 F.3d at 144 (citation modified) (quoting *United States v. Krout*, 66 F.3d 1420, 1430 (5th Cir. 1995)).

Morgan has not established that the district court abused its discretion in denying a continuance. Morgan argues that the district court's denial was unreasonable because (1) he did not have additional time to demonstrate that revocation was unwarranted; and (2) he could not present additional information and evidence. As to the first argument, the Government is correct that the additional time Morgan requested is essentially an alternative to revocation. As explained above, the district court's determination that the statutory exception to mandatory revocation did not apply was not an abuse of discretion. And as to the second request, although Morgan may have wished for additional time or testimony—and perhaps other judges would have offered him those opportunities—that does not transform the district judge's decision to an abuse of discretion. Morgan's counsel began the hearing by confirming that there was no reason not to proceed with the

No. 26-30018

revocation hearing for that day. When the district court judge determined that revocation was mandatory, Morgan's supervised release had to be revoked. And on appeal, Morgan does not challenge the length of imprisonment imposed on the revocation. Thus, he was not prejudiced. *See Barnett*, 197 F.3d at 144

## VI

For the foregoing reasons, the judgment of the district court is AFFIRMED.